FILED

2019 May-30  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **STACEY BRIDGES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 17:19-CV-00529-LSC |
| ) | |
| **J.C. POE, JR.,** individually and in his ) | |
| official capacity as Police Chief of the ) | |
| **CITY OF JASPER** Police Department, ) | |
| **DEBORAH JOHNSON,** individually ) | |
| and in her official capacity as a Jail ) | |
| Supervisor, and **DENNIS BUSBY,** ) | |
| individually and in his official capacity ) | |
| as Jailer, ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, **STACEY BRIDGES ("BRIDGES" OR "PLAINTIFF")**, states as follows for her Complaint against Defendants, **J.C. POE, JR. ("POE")**, **DEBORAH JOHNSON ("JOHNSON")** and **DENNIS BUSBY ("BUSBY")**:

## INTRODUCTION

Pursuant to the Court's Order in this matter, this Amended Complaint discloses the identity of Plaintiff, Stacey Bridges. The Amended Complaint adds new claims arising under 18 U.S.C. § 1595. The Amended Complaint also clarifies previous factual allegations and adds additional factual allegations. These allegations make it clear that there was a direct causal relationship between the

actions of Poe and Johnson and the injury suffered by Plaintiff. Poe allowed male jailers to command women trustees and to take them into areas where they could not be surveilled by video or otherwise, and he did so after the Jail had notice that male jailers were harassing women inmates and after the Mayor in a neighboring town was charged with sexually abusing women inmates. The natural and direct consequence of this indifference was the sexual abuse of the women by the male jailers. When Johnson became aware that a male jailer sexually desired Plaintiff but basically did nothing other than to keep the Plaintiff away from men while Plaintiff was in Johnson's presence, the predictable result of her inaction or inadequate action was the sexual abuse of the Plaintiff, especially in light of the circumstances just stated (which is to say, poor surveillance and a record of previous problems with sexual harassment of prisoners).

### *Parties*

1.      Bridges is a female resident of the Western Division of the Northern District of Alabama and is a natural person over the age of 21 years.

2.      Poe is a male resident of the Western Division of the Northern District of Alabama and is a natural person over the age of 21 years. At all times relevant to this lawsuit, Poe served as the Chief of Police for the City of Jasper. As Chief of Police of the City of Jasper Police Department, Poe served as the highest-ranking law enforcement officer employed by the City and assumed responsibility for

oversight of all day-to-day law enforcement responsibilities for the police department of the City, including the operations of the City's jail.

3.      Johnson is a female resident of the Western Division of the Northern District of Alabama and is a natural person over the age of 21 years.  At all times relevant to this lawsuit, Johnson served as the day-shift supervisor of the City's Jail. At times preceding the events described below and on other occasions, Johnson received reports of on-going sexual harassment and abuse of female inmates by male Jailers employed in the Jail and she failed or refused to act to stop that unlawful conduct.[1]

4.      Busby is a male resident of the Western Division of the Northern District of Alabama and is a natural person over the age of 21 years.  At all times relevant to this lawsuit, the City employed Busby as a Jailer in the City's Jail.

5.      The City is a municipal corporation, duly organized and existing under the laws of the State of Alabama, situated within the Western Division of the Northern District of Alabama.

---

[1] The Eleventh Circut recently reaffirmed the clearly established law that "a guard does not need to know a detainee's specific ... condition to be deliberately indifferent to his or her serious medical need. *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 252 (5th Cir. 2018) (concluding that courts do not require state officials to be warned of a 'specific danger' to be held liable for deliberate indifference to a serious ... need .... Liability can attach even if a prison official knows only that, if no action is taken, the detainee faces a 'substantial risk of serious harm.' *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)." *Taylor v. Hughes*, No. 17-14772 (11th Cir. April 3, 2019).

### *Jurisdiction*

6.     The original jurisdiction of this Court is invoked pursuant to 29 U.S.C. §§ 1331 and 1343(a)(3) and (4) to obtain redress for the deprivation of rights guaranteed by the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983. The original jurisdiction of the Court is also invoked to obtain redress under 18 U.S.C. § 1595.

7.     The Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 for state claims that arise from the same facts and circumstances from which Plaintiff's federal claims arose.

8.     Venue is proper pursuant to 28 U.S.C. § 1393(b), in that the events or occurrences giving rise to Plaintiff's claims occurred in the Northern District of Alabama, Western Division.

### *Facts*

9.     Plaintiff has suffered enormous tragedy in her personal life including, but not limited to, a serious car wreck and the recent death of her husband.

10.     Health care providers prescribed Plaintiff opioid pain medication to help her endure various physical pain symptoms.  Over time, she developed an addiction to the medication prescribed for her.

11.     When her healthcare provider discontinued prescribing Plaintiff medication for physical pain, Plaintiff began using heroin.

4

12.     As a result of her heroin use and addiction, Plaintiff engaged in criminal behavior.

13.     Plaintiff was arrested for various misdemeanors and one felony (which was downgraded to a misdemeanor).  Plaintiff was convicted of misdemeanors, but was not convicted of any felonies.

14.     In connection with one misdemeanor conviction in the Jasper Municipal Court, Plaintiff was sentenced to confinement in the Jasper City Jail ("Jail").

15.     On or about February 5, 2017, Plaintiff began serving a 90-day sentence in the Jail.

16.     Shortly after her sentence began, Jail guards assigned Plaintiff to work release, thus allowing her to work on community projects. Plaintiff was locked up at night during work release, but was free to work outdoors during the day. Her confinement was not in the Jail, but was rather in another secure facility.

17.     When her work release terminated, Plaintiff was confined in the Jail, where she became a trustee.

18.     Plaintiff's status as a trustee meant that she was not confined to her cell block continuously, but was able to leave her cell and cell block to perform work under the supervision of her jailers.

19.   As a trustee, Plaintiff performed physical labor (such as preparing meals, doing laundry, and cleaning) outside the direct supervision of a jailer.

20.   Jail inmates coveted the position of trustee because it eased confinement, which would otherwise restrict them to their cells or cell blocks 23 hours a day.

21.   Plaintiff used tobacco before she became an inmate in the Jail.

22.   The discomfort of withdrawing from tobacco use in jail can be severe.

23.   The City formally prohibited cigarette smoking and the use of smokeless tobacco in the Jail.

24.   In the Jail, both male and female Jailers guarded the female prisoners.

25.   Male jailers were frequently allowed to guard female prisoners without direct supervision and without the presence of female jailers.

26.   Male jailers, not limited to Busby, would summon Plaintiff to a room where one or more male jailers were present.

27.   Various areas of the Jail were surveilled by video cameras, whose signals appeared on monitors located in the central office where jailers monitored inmates.

28.   The areas surveilled by video cameras included the area where female prisoners showered.

6

29.   Prior to Plaintiff's incarceration, male jailers in the Jail engaged in sex with female prisoners confined there.

30.   On at least one occasion, approximately two years before Plaintiff began her confinement, at least one female prisoner lodged an official complaint with Johnson alleging inappropriate sexual harassment and abuse.

31.   In 2013, the Mayor of Carbon Hill, Alabama was indicted for having sex with female prisoners in the municipal jail of that city. The Mayor eventually pled guilty to certain crimes in the United States District Court for the Northern District of Alabama.

32.   Carbon Hill is less than 20 miles away from Jasper, and the Mayor's prosecution was well publicized, thus putting Poe and others on notice that female prisoners were at risk of sexual abuse.

33.   Shortly after Plaintiff began serving her sentence in the Jail, it became apparent to other people, as well as to Plaintiff, that Busby sexually desired Plaintiff.

34.   Busby would give Plaintiff drugs.

35.   Busby would give Plaintiff tobacco.

36.   Busby would make sexually suggestive comments to and about Plaintiff in her presence.

37.   Busby would make sexually suggestive comments about Plaintiff in the presence of persons other than Plaintiff.

38.    After Plaintiff became a trustee, Busby summoned Plaintiff to a room on the first floor of the Jail, which was used for laundry and storage.

39.    The room on the first floor of the Jail contained a storage closet ("First Floor Closet").

40.    The City failed adequately to surveil the First Floor Closet with video cameras.

41.    The City failed to surveil the entryway to the First Floor Closet with video cameras so that someone viewing the monitors could discern who entered or exited the closet

42.    Busby, aware that the First Floor Closet's surveillance was inadequate, entered the First Floor Closet and directed Plaintiff to join him there.

43.    Cameras surveilled the room which contained the First Floor Closet, but did not surveil the closet itself. Thus, on the video monitors, one could see persons enter the room and leave the field of view monitored by the cameras without going through the same exit by which such persons entered the room.

44.    After Plaintiff entered the First Floor Closet, Busby forcefully groped and kissed Plaintiff, though Plaintiff resisted.

45.    After this initial sexual assault in the First Floor Closet, Busby continued to summon Plaintiff to the First Floor Closet on other occasions, where he would forcefully grope, fondle and kiss her.

46.     The second floor of the Jail included a storage room ("Second Floor Room") where, among other things, the Jail maintained a freezer where it stored frozen foods.

47.     As part of her duties as trustee, Plaintiff would prepare food for inmates and/or Jail personnel.

48.     As trustee, Plaintiff would also load and unload food stored in the freezer located in the Second Floor Room.

49.     Busby would summon Plaintiff to the Second Floor Room to assist with the loading and unloading of food.

50.     Busby would direct Plaintiff to follow him into the Second Floor Room.

51.     Once Busby and Plaintiff were alone together in the Second Floor Room, Busby would forcefully grope, fondle, and kiss the Plaintiff.

52.     When Busby and Plaintiff were alone together in the Second Floor Room, Busby forced Plaintiff to perform oral sex on him.

53.     The Jail premises included an outbuilding called the Connex.

54.     The City failed to install video cameras in the Connex to allow surveillance of the entry, exit, and interior of the building.

55.     Busby directed Plaintiff to accompany him to the Connex on multiple occasions, where he sexually molested Plaintiff while they were alone together inside the building.

9

56.     Busby attempted on one occasion to have vaginal intercourse with Plaintiff but stopped when Plaintiff alerted him to the sound of someone approaching.

57.     Busby was not the only jailer at the Jail to sexually assault female prisoners.

58.     In light of all the circumstances, the failure of Poe and Johnson  to take measures to keep female prisoners such as Plaintiff safe from sexual attacks when such prisoners became trustees directly resulted in the sexual violation of the Plaintiff by Busby.

59.     For purposes of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as the City of Jasper Chief of Police, Poe, is the senior official responsible for implementing policy at the Jail.  As such, he is responsible for the day-to-day operations of, the adoption of, and the implementation of all policies, practices, and customs in the Jail and, as such, serves as the City's final policy-making authority over the City Jail.

## *COUNT I*

### *UNLAWFUL DETENTION AND CRUEL AND UNUSUAL PUNISHMENT*

60.     Plaintiff adopts and incorporates by reference paragraphs 1 through 59 of this First Amended Complaint, as if fully set forth herein.

61.    At all times relevant to this action, Poe, Johnson, and Busby acted under color of state law.

62.    Poe, Johnson and Busby are sued individually and in their official capacities, Poe as Chief of Police, Johnson as Jail Supervisor, and as Jailer, respectively, who allowed, condoned, and ratified the customs and practices arising to a policy thereby authorizing the sexual harassment and abuse of female inmates of the Jail, including Plaintiff.

63.    Defendants Poe and Johnson allowed a custom and practice to develop at the Jail arising to a policy, thereby authorizing male jailers to sexually abuse female prisoners, including Plaintiff.  In particular, and without limitation of the foregoing, Poe and Johnson allowed male jailers openly to make salacious remarks about and to female prisoners without reprimand, allowed male jailers to accompany female prisoners to locations in the Jail that were "off camera," and allowed male jailers to be alone with female prisoners in those locations.

64.    Poe and Johnson knew or should have known that female prisoners were vulnerable to sexual abuse forced upon them by male jailers.  Poe and Johnson failed and/or refused to implement measures to deter and to stop the sexual abuse of female prisoners, but rather tolerated such abuse and fostered a physical environment making such abuse a likelihood, if not a certainty.

11

65.     In particular and without limitation of the foregoing, Poe and Johnson allowed male jailers such as Busby: (a) to routinely make sexual remarks about female prisoners while they oversaw female prisoners; (b) to escort and observe female prisoners to and from the shower, where they observed them and encouraged them to provide "a show"; (c) to accompany female prisoners into storage rooms and other inadequately surveilled areas, where the male Jailers could and did sexually molest them; (d) to provide drugs and tobacco to female prisoners who were addicted to drugs and tobacco to ingratiate themselves to the inmates and thereby encourage them to engage in sexual activities; and (e) to condition female inmates' trustee status on their acquiescence to the sexual advances of their male Jailers.

66.     These practices allowed by Poe and Johnson were due to the decisions made by Poe and other Supervisors, such as Johnson, who Poe selected as Supervisor of the day-time shift and placed in charge of the Jail, who together served as the final policy-making authorities over the day-to-day operations of the municipal Jail.

67.     The customs and practices of allowed by Poe and Johnson violated Plaintiff's rights, as guaranteed by the Fourth and Eighth Amendments of the United States Constitution, as such amendments are made applicable to the States by the Fourteenth Amendment of the United States Constitution and made actionable by 42 U.S.C. § 1983.

68.     As a result of the actions of Defendants Poe, Johnson, and Busby Plaintiff has suffered and continues to suffer physical injuries, severe emotional distress and mental anguish, and other injuries.

69.     Defendants Poe, Johnson and Busby acted with deliberate indifference to Plaintiff's federally protected rights.

## COUNT II
## CONSPIRACY

70.     Plaintiff adopts and incorporates paragraphs 1 through 69 of this First Amended Complaint, as if fully set forth herein.

71.     At all times relevant to this action, Poe, Johnson and Busby acted under color of state law.

72.     Poe, Johnson and Busby are sued individually and in their official capacities, Poe as Chief of Police, Johnson as Jail Supervisor, and Busby as Jailer, respectively, who allowed, authorized, condoned, and ratified the customs and practices arising to a policy of allowing male jailers to sexually molest and abuse female inmates of the City Jail, including the Plaintiff.

73.     Poe, Johnson and Busby, while exercising positions of authority under color of state law in their capacity as public law enforcement officials and representatives of the City and its Police Department, unlawfully conspired to and did, in fact, allow customs and practices about which they knew or should have

13

known, allowing for the sexual harassment and abuse of female inmates incarcerated in the City Jail.

74.    Poe and Johnson allowed, authorized, ratified, and/or condoned Busby's actions, thereby making them co-conspirators who are likewise liable for the injuries Plaintiff suffered.

75.    As a direct and proximate result of the conspiracy between Poe, Johnson and Busby as set forth above, Plaintiff suffered physical injury and incurred severe mental anguish and emotional distress, all in violation of the Plaintiff's rights as guaranteed by the Fourth and Eighth Amendments of the United States Constitution, as such amendments are made applicable to the States by the Fourteenth Amendment of the United States Constitution and made actionable by 42 U.S.C. § 1983.

76.    As a result of the actions of Poe, Johnson and Busby, Plaintiff has suffered and continues to suffer injuries including, but not limited to, physical injuries, severe emotional distress and mental anguish.

77.    Poe, Johnson and Busby acted with deliberate indifference to Plaintiff's federally protected rights.

## *COUNT III*

## *ASSAULT AND BATTERY*

78.   Plaintiff adopts and incorporates paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.   Busby is sued under this Count in his individual capacity only.

80.   Busby, while exercising a position of authority in his capacity as a public law enforcement official, unlawfully assaulted and battered the Plaintiff, by willfully and intentionally sexually harassing and molesting her.

81.   Poe and Johnson are sued under this Count in their individual capacities only.

82.   Poe and Johnson allowed, authorized, ratified, and/or condoned Busby's actions and/or failed to stop him, thereby making them also liable for the injuries Plaintiff sustained.

83.   As a direct and proximate result of the acts of Busby, Poe and Johnson, as set forth above, Plaintiff suffered physical injury, severe mental anguish and emotional distress in connection with the assault and battery to which she was subjected.

## *COUNT IV*

## *NEGLIGENT HIRING*

84.   Plaintiff adopts and incorporates paragraphs 1 through 83 of this Complaint, as if fully set forth herein.

15

85.    Poe is sued under this Count in his individual capacity only.

86.    Defendant Poe owed a duty to Plaintiff to conduct such due diligence as was necessary to ensure that Jail supervisors and law enforcement officers employed by the City's Police Department to serve as jailers in its Jail were suitably prepared through education, training, experience and temperament to protect the rights of the inmates over whom they were entrusted.

87.    Busby and Johnson are sued under this Count in their individual capacities only.

88.    Busby, Poe and Johnson, as demonstrated by Busby's sexual harassment and assault of Plaintiff, and Poe's and Johnson's failure to take adequate remedial action to discipline him and others or otherwise to take measures to cause this harassment and assault to stop, demonstrated they are both unfit for duty as representatives of law enforcement.  Poe and Johnson knew or should have known that Busby was engaged in sexually harassing and abusing female inmates of the jail and that he was unfit for duty as a law enforcement officer.  In hiring Busby as a Jailer and by providing him the means to sexually harass and assault female inmates of the Jail, including Plaintiff, in the unlawful manner alleged above, Poe and Johnson breached their duty to Plaintiff.

89.    As a direct and proximate result of the breach of their duty to Plaintiff, Poe and Johnson caused Plaintiff to suffer physical injury and suffer severe mental

anguish and emotional distress and other injuries in connection with their negligent hiring of Busby.

## *COUNT V*

### *NEGLIGENT TRAINING AND SUPERVISION*

90.     Plaintiff adopts and incorporates paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.     Poe and Johnson are sued under this Count in their individual capacities only.

92.     Poe and Johnson owed a duty to the inmates incarcerated in the Jail, including Plaintiff, to train, supervise, and discipline its law enforcement officers, including Busby, in whatever manner necessary to ensure they served and protected the rights of the inmates incarcerated in the Jail.

93.     Poe and Johnson breached their duty to Plaintiff by failing to properly train, supervise, and discipline Busby and others and thereby provided them the means to sexually harass and assault Plaintiff in the unlawful manner alleged above.

94.     As a direct and proximate result of the breach of their duty, Poe and Johnson caused Plaintiff to suffer physical injury and suffer severe mental anguish and emotional distress as a result of the negligent training and supervision of Busby.

## *COUNT VI*

### *VIOLATION OF ALA. CODE SECTION 14-11-31*

95.     Plaintiff adopts and incorporates paragraphs 1 through 94 of this Complaint, as if fully set forth herein.

96.     Poe, Johnson and Busby are sued under this Count in their individual capacities only.

97.     Plaintiff has the right to bring this claim pursuant to *Hardie-Tynes Manufacturing Co. v. Cruse,* 189 Ala. 66, 78, 66 So. 657, 661 (Ala. 1914), wherein the Alabama Supreme Court held that "every criminal act which injures the person or property of another is also a civil tort, redressable by the courts."  See also, *Martina v. Cagle,* 454 So. 2d 1383, 1385 (Ala. 1984); and *Smitherman v. McCafferty,* 622 So. 2d 322 (Ala. 1993).

98.     Alabama Code § 14-11-31, in pertinent part, provides that:

(a)  It shall be unlawful for any employee to engage in sexual conduct with a person who is in custody of the Department of Corrections, the Department of Youth Services, a sheriff, a county, or a municipality.

(b)  ...

(c)  Any person violating subsection (a) or (b) shall, upon conviction, be guilty of custodial sexual misconduct.

(d)  Custodial sexual misconduct is a Class C felony.

(e)  For purposes of this article, the consent of the person in custody of the Department of Corrections, the Department

18

> of Youth Services, a sheriff, a county, or a municipality…
> shall not be a defense to a prosecution under this article.

99.    On numerous occasions, Busby violated Alabama Code § 14-11-31 by engaging in custodial sexual misconduct with Plaintiff.

100.   Poe and Johnson knew or should have known that female prisoners were vulnerable to custodial sexual misconduct imposed upon them by male jailers. Poe and Johnson failed and/or refused to implement measures to deter and stop the custodial sexual misconduct imposed upon female prisoners, but rather tolerated such abuse and fostered a physical environment making such abuse a likelihood, if not a certainty.

101.   In particular and without limitation of the foregoing, Poe and Johnson allowed male jailers: (a) to routinely make sexual remarks about female prisoners while they oversaw female prisoners; (b) to escort female prisoners to and from the shower, where they observed them and encouraged them to provide "a show"; (c) to accompany female prisoners into storage rooms and other inadequately surveilled areas, where the male jailers could and did sexually molest female prisoners; (d) to provide drugs and tobacco to female prisoners who were addicted to drugs and tobacco; and (e) to condition female inmates' trustee status on their acquiescence to the sexual advances of the male jailers.

102.   These practices allowed by Poe and Johnson were due to the decisions made by the Chief of Police, who is the final policy-making authority over the day-to-day operations of the municipal Jail.

103.   As a result of the actions of Poe, Johnson and Busby, Plaintiff has suffered and continues to suffer injuries including, but not limited to, physical injuries, severe emotional distress and mental anguish.

### COUNT VII

### OUTRAGE

104.   Plaintiff adopts and incorporates paragraphs 1 through 103 of this Complaint, as if fully set forth herein.

105.   Poe, Johnson and Busby are sued in their individual capacities only.

106.   Poe, Johnson and Busby intentionally and/or recklessly caused Plaintiff to suffer great physical injury and emotional distress and such other injuries and damages as alleged above.

107.   The actions of Poe, Johnson and Busby were so outrageous and so extreme in degree as to go beyond all bounds of decency, and are atrocious and utterly intolerable in a civilized society.

108.   The emotional distress and bodily injury Poe, Johnson and Busby inflicted upon the Plaintiff were so severe that no reasonable person could be expected to endure it.

20

### COUNT VIII

### SEX TRAFFICKING

109.   Plaintiff adopts and incorporates paragraphs 1 through 108 of this First Amended Complaint, as if fully set forth herein.

110.   When Plaintiff became a trustee at the Jail, Poe, Johnson and Busby "obtained" Plaintiff within the meaning of 18 U.S.C. § 1591, in that Plaintiff was segregated from the rest of the women in the jail population, such that she would be alone with male jailers in areas of the Jail that were not surveilled by video camera or otherwise.

111.   By making Plaintiff a trustee at the Jail, such that Plaintiff was allowed to the leave her cell block, Poe, Johnson and Busby "enticed" Plaintiff within the meaning of 18 U.S.C. § 1591.

112.   By providing drugs and tobacco to Plaintiff, Busby "enticed" Plaintiff within the meaning of 18 U.S.C. § 1591.

113.   When they obtained and/or enticed Plaintiff as described above, Poe, Johnson and Busby did so with either actual knowledge of or reckless disregard of the fact that Plaintiff would be, by threats of force, fraud or coercion, caused to commit a commercial sex act, as that term is defined in 18 U.S.C. § 1591.

114.   In particular and without limitation of the foregoing, Poe, Johnson and Busby had actual knowledge of or acted in reckless disregard of the fact that Plaintiff

would be subjected to a scheme and/or pattern of conduct that would make Plaintiff believe that she would be subject to serious physical harm including, but not limited to, mental trauma if she failed to perform one or more acts, such as the tasks required of a trustee, but also if she failed to perform one or more commercial sex acts, as that term is defined in 18 U.S.C. § 1591.

115.   Poe, Johnson and Busby participated in a venture whereby Plaintiff was obtained and/or enticed to work as a trustee and subjected to a scheme and/or pattern of conduct that would make Plaintiff believe that she would be subject to serious physical harm including, but not limited to, emotional trauma if she failed to perform one or more acts, such as the tasks required of a trustee, but also if she failed to perform one or more commercial sex acts, as that term is defined in 18 U.S.C. § 1591.

116.   Poe, Johnson and Busby financially benefited and received things of value by virtue of obtaining and/or enticing Plaintiff to serve as a trustee, whereby Plaintiff would be subjected to a scheme and/or pattern of conduct that would make Plaintiff believe that she would be subject to serious physical harm including, but not limited to, emotional trauma if she failed to perform one or more acts, such as the acts of a trustee, but also if she failed to perform one or more commercial sex acts, as that term is defined by 18 U.S.C. § 1591.  The financial benefit received by these individuals included the labor of Plaintiff and the fruits of that labor including,

22

but not limited to, Plaintiff laundering clothes, laundering and folding towels, and preparing meals that were consumed by jail employees and/or other inmates.

117.   Poe, Johnson and Busby actually knew the fact, or in the alternative, acted in reckless disregard of the fact, of the danger of serious physical harm in which they placed Plaintiff.

**WHEREFORE**, Plaintiff respectfully prays judgment as follows:

A.   For compensatory damages against Poe, Johnson and Busby, in their official capacities as representatives of the City, in an amount to be proven at trial;

B.   For exemplary and punitive damages against Poe and Johnson, in their individual capacities, in an amount to be proven at trial;

C.   For injunctive relief against Poe, Johnson and Busby, as well as all those acting in concert with them, requiring them to exercise diligence in hiring practices and to properly train, supervise, and discipline their jailers, as well as to operate the Jail in a manner reasonably calculated to promote the safety of the women incarcerated there.

D.   For the costs of this suit, including Plaintiff's reasonable attorneys' fees, costs and expenses; and

E.   For such further and other relief as the Court deems appropriate.

Respectfully submitted,


/s/ Michele E. Pate
Michele E. Pate (ASB-4457-E49F)
Law Office of Michele E. Pate
P.O. Box 3391
Jasper, AL  35502
(205) 275-1700
mpatelaw@gmail.com
**Attorney for Plaintiff**


/s/ Andrew C. Allen
Andrew Allen (ASB-3867-E56A)
Law Offices of Andrew C. Allen, LLC
Of Counsel
Fulmer Schudmak, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
(205) 847-5199
aallen@fulmershudmak.com
**Attorney for Plaintiff**


/s/ Frank Ozment
Frank Ozment (ASB-7203-N73J)
Frank Ozment Attorney at Law, LLC
Of Counsel
Fulmar Schudmak, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
(205) 918-8905
frank@fulmershudmak.com
**Attorney for Plaintiff**

24

## Certificate of Service

I hereby certify that on the 28th day of May, 2019, I filed the foregoing electronically through the Court's CM/ECF filing system which will provide notice to the following:

Timothy P. Donahue
Brian J. Ware
DONAHUE & ASSOCIATES LLC
1020 22nd Street South
Birmingham, AL  35205
*Attorney for Defendants*
*J.C. Poe, Jr. and Deborah Johnson*


NOTE: Dennis Busby will not be served electronically in this manner, as prescribed above, but by certified mail or other lawful process, unless Busby or counsel for Busy enters an appearance in this matter after the Amended Complaint is allowed.


/s/ Andrew C. Allen
Andrew Allen (ASB-3867-E56A)

25

## **DECLARATION UNDER PENALTY OF PERJURY**

I, Stacey Bridges, being of sound mind and over the age of 19-years, hereby declare under penalty of perjury that I have read the factual allegations contained in paragraphs 9 through 118 of this First Amended Complaint, that I have personal knowledge of those allegations relating to my incarceration in the Jasper City Jail, and that I verify that those facts as stated are true and accurate to the best of my knowledge and belief.

Attested hereto this 28th date of May, 2019.

Stacey Bridges

26