FILED
2020 Apr-20  PM 01:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

STACEY BRIDGES,            )
    Plaintiff,            )
                  )
vs.            )            7:19-cv-00529-LSC
                  )
J.C. POE, JR., *et al.*,            )
    Defendants.            )

CHARITY TESSENER,            )
    Plaintiff,            )
                  )
vs.            )            7:19-cv-01314-LSC
                  )
J.C. POE, JR., *et al.*,            )
    Defendants.            )

JESSICA RAINER,            )
    Plaintiff,            )
                  )
vs.            )            7:19-cv-01392-LSC
                  )
J.C. POE, JR., *et al.*,            )
    Defendants.            )

WHITLEY GOODSON,                    )
                                    )
        Plaintiff,                  )
                                    )        6:19-cv-01399-LSC
    vs.                             )
                                    )
J.C. POE, JR., *et al.*,            )
                                    )
        Defendants.                 )

MEGAN DUNN,                         )
                                    )
        Plaintiff,                  )
                                    )        7:19-cv-01571-LSC
    vs.                             )
                                    )
J.C. POE, JR., *et al.*,            )
                                    )
        Defendants.                 )

ALLISON MANN,                       )
                                    )
        Plaintiff,                  )
                                    )        7:19-cv-01961-LSC
    vs.                             )
                                    )
J.C. POE, JR., *et al.*,            )
                                    )
        Defendants.                 )

## MEMORANDUM OF OPINION AND ORDER

Before the Court is Defendants J.C. Poe, Jr. ("Poe"), Deborah Johnson ("Johnson"), and the City of Jasper's ("the City") (collectively, "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 40 in *Bridges v.*

*Poe et al.*, 7:19-cv-00529-LSC.)  Plaintiff Stacey Bridges ("Bridges") brought this suit under 42 U.S.C. § 1983 and the Trafficking Victims Protection Act, 18 U.S.C. § 1589 *et seq.* ("TVPA"), for compensatory and punitive damages for injuries she suffered while confined at the Jasper City Jail (the "Jail"), where she alleges she was sexually harassed and raped by jailer Dennis Buzbee ("Buzbee").[1]  She also brings § 1983 supervisory failure to protect claims against Poe and Johnson, and a municipal liability claim against the City.   Additionally, she brings state law claims for conspiracy, assault and battery, negligent hiring, negligent training and supervision, outrage, and violation of Ala. Code § 14-11-31, which prohibits municipal employees from engaging in sexual conduct with a person who is in the custody of a municipal jail.

The motion is fully briefed and ripe for decision.[2]  For the reasons stated below, the motion is due to be granted in part and denied in part.

---

[1]     Bridges has also sued Buzbee in this action, but he had not yet been served when Defendants filed their motion.

[2]     Defendants' motion (doc. 40) asserts the same grounds for dismissal as their Motion to Dismiss Plaintiff's First Amended Complaint (doc. 19), which was mooted by the filing of Bridges's Second Amended Complaint.  The earlier motion (doc. 19) was fully briefed.  (*See* docs. 21 & 22.)  Accordingly, the Court entered an order explaining that it would take the present motion (doc. 40) under consideration based on the previously submitted briefs unless Bridges filed a statement with the Court requesting leave to file an additional response.  It appears that Bridges filed no such statement.

## I.    BACKGROUND[3]

On or about February 5, 2017, Bridges began serving a 90-day sentence at the Jail for a misdemeanor conviction. According to the complaint, Poe was the City's Chief of Police and was the final policy-maker for the Jail, and Johnson was the day-shift supervisor. Early in her sentence, Bridges was assigned to work release, and she stayed at another secure facility rather than the Jail. When the work release ended, Bridges was confined in the Jail and became a trustee. As a trustee, Bridges was able to leave her cell block to perform work under the supervision of her jailers. She performed physical labor, such as preparing meals, doing laundry, and cleaning. Inmates coveted the position of trustee because it eased confinement, which would otherwise restrict them to their cells or cell blocks for 23 hours per day.

Both male and female jailers guarded inmates in the Jail. Male jailers were frequently allowed to guard female inmates without direct supervision and without the presence of female jailers. Various areas of the Jail were surveilled by video cameras whose signals appeared on monitors located in the central office where jailers monitored inmates. The areas surveilled by video cameras included the area where female prisoners showered. Bridges alleges that male jailers such as Buzbee

---

[3]    In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). Therefore, the following facts are taken from Bridges's complaint, and the Court makes no ruling on their veracity.

escorted female inmates to and from the showers, where they observed them and encouraged them to provide "a show" while other male jailers watched on the monitors.

Bridges also alleges that prior to her incarceration, male jailers engaged in sex with female inmates confined in the Jail. She also states that "[a]t times preceding the events described below and on other occasions," Johnson received reports of ongoing sexual harassment and abuse of female inmates by male jailers, but Johnson "failed or refused to act to stop that unlawful conduct." (Doc. 35 ¶ 3.) Approximately two years before Bridges's confinement, at least one female inmate lodged an official complaint with Johnson alleging inappropriate sexual harassment and abuse. Additionally, in 2013, the Mayor of Carbon Hill, Alabama was indicted for having sex with female inmates in the municipal jail of that city. The Mayor pled guilty to certain crimes in the United States District Court for the Northern District of Alabama. According to Bridges's complaint, "Carbon Hill is less than 20 miles away from Jasper, and the Mayor's prosecution was well publicized, thus putting Poe and others on notice that female prisoners were at risk of sexual abuse." (Doc. 35 ¶ 32.)

Shortly after Bridges began serving her sentence, she says it became apparent to her and others that Buzbee sexually desired her. He allegedly gave her drugs and

tobacco.[4] He also allegedly made sexually suggestive comments to and about Bridges in her presence and in the presence of others.  According to Bridges, male jailers frequently made salacious remarks to and about female inmates.

Bridges alleges that in exchange for drugs, tobacco, and making her a trustee, Buzbee demanded that she perform sex acts on him under threat of physical, emotional, and mental harm.  After Bridges became a trustee, Buzbee allegedly summoned her to a room on the first floor of the Jail used for laundry and storage. This room contained a storage closet ("the First Floor Closet").  Bridges alleges that the City failed to adequately surveil the First Floor Closet with video cameras. Additionally, she alleges that the City failed to surveil the entryway to the First Floor Closet with video cameras so that someone viewing the monitors could discern who entered or exited the closet.  Thus, on the video monitors, one could see persons enter the room and leave the field of view monitored by the cameras without going through the same exit by which such persons entered the room.  Bridges alleges that Buzbee was aware that the First Floor Closet's surveillance was inadequate and directed her to join him there.  After she entered the closet, Buzbee allegedly forcefully groped and kissed her, even though she resisted.  Bridges says that Buzbee

---

[4]     The City formally prohibited smoking and smokeless tobacco use in the Jail.  Bridges alleges that she used tobacco prior to arriving at the Jail and that the discomfort of withdrawing from tobacco use can be severe.

continued to summon her to the First Floor Closet on other occasions where he would forcefully grope, fondle, and kiss her.

The second floor of the Jail contained a storage room ("Second Floor Room") where, among other things, the Jail maintained a freezer for frozen foods. As part of her duties as trustee, Bridges loaded and unloaded food stored in the freezer. Buzbee allegedly would summon Bridges to the Second Floor Room to assist with loading and unloading food, and once they were alone together, he would forcefully grope, fondle, and kiss her. He also allegedly forced her to perform oral sex on him in the Second Floor Room.

The Jail premises also included an outbuilding called the Connex. Bridges alleges that the City failed to install video cameras in the Connex to allow surveillance of the entry, exit, and interior of the building. She further alleges that Buzbee directed her to accompany him to the Connex on multiple occasions and sexually molested her while they were alone together inside the building. Buzbee allegedly tried to have vaginal intercourse with Bridges on one occasion but stopped when she alerted him to the sound of someone approaching.

Bridges alleges that Buzbee was not the only jailer to sexually assault female inmates at the Jail. She also alleges that in light of all of the circumstances, the failure of Poe and Johnson to take measures to keep female inmates such as Bridges safe

from sexual attack when such prisoners became trustees directly resulted in Buzbee's sexual assault of Bridges.  Finally, she alleges that Poe and Johnson "had actual knowledge of or acted with reckless disregard of the fact" that Bridges would be forced to commit sex acts and that she "would be subjected to a scheme and/or pattern of conduct that would make [her] believe that she would be subject to serious physical harm" if she failed to perform sex acts.  (Doc. 35 at ¶¶ 113–14.)

## II.    STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level."  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam)).  A complaint that "succeeds

in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)). Ultimately, the Court must be able to draw a reasonable inference from the facts that the other party is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). The Court must construe pleadings broadly and resolve

inferences in the nonmoving party's favor. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

## III.   DISCUSSION

The City seeks to dismiss the § 1983 claim against it, arguing that Bridges has failed to sufficiently allege an official municipal policy, custom, or practice that resulted in a deprivation of her constitutional rights.  The City also seeks to dismiss the state law claims against it, arguing that Bridges failed to comply with the requirements of Ala. Code §§ 11-47-23 and 11-47-192 to submit a sworn statement to the City regarding her claim within six months of her injury.  Additionally, Poe and Johnson seek dismissal of the § 1983 claim against them, arguing that Bridges has not sufficiently alleged a widespread pattern of abuse such that they can be held liable as supervisors.  Poe and Johnson also seek dismissal of the state law claims for failure to state a claim.  In her response, Bridges conceded that her claims for assault and battery and for violation of Ala. Code § 14-11-31 against Poe and Johnson were due to be dismissed without prejudice.  This Court will address the remaining claims in turn.

### A. § 1983 Claim Against Poe and Johnson

To establish a claim under § 1983 against an individual, a plaintiff must show that a person acting under color of state law deprived her of a federal right. *Myers v.*

*Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013).   While prison officials have a constitutional duty to protect inmates, "[a] prison custodian is not the guarantor of a prisoner's safety." *See Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).

### 1.  Supervisory Liability

Bridges alleges that Poe and Johnson were both supervisors within the Jail.  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Rather, a supervisor may be liable either when he "personally participates in the alleged unconstitutional conduct or when there is a causal connection" between the supervisor's actions and the constitutional deprivation.  *Id.*  The requisite causal connection can be established in one of three ways: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinate would act unlawfully and failed to stop them from doing so."  *Id.*

(internal citations and quotation marks omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hartley*, 193 F.3d at 1269). The standard for supervisory liability is "extremely rigorous." *Cottone*, 326 F.3d at 1360.

Bridges does not allege that Poe or Johnson personally participated in any unconstitutional conduct, so the viability of her supervisory claim depends on whether she plausibly alleged a causal connection between Poe's and Johnson's actions and the constitutional deprivation. Poe and Johnson argue that the Second Amended Complaint contains insufficient allegations of widespread abuse to put them on notice of a problem with male jailers sexually assaulting female inmates. Bridges makes the following allegations about sexual assaults of female inmates: (1) prior to Bridges's incarceration, male jailers engaged in sex with female inmates confined at the Jail;[5] (2) Johnson had received reports of ongoing sexual abuse of female inmates by male jailers prior to Bridges's incarceration "and on other occasions," but Johnson "failed or refused to act to stop that unlawful conduct,"

---

[5] Alabama law prohibits jailers from having sexual contact with inmates in their custody. *See* Ala. Code § 14-11-31.

(doc. 35 ¶ 3); and (3) approximately two years prior to Bridges's confinement, at least one female inmate lodged an official complaint with Johnson alleging inappropriate sexual harassment and abuse.  The Court concludes that the facts as currently pled are insufficient for it to determine whether the alleged acts within the Jail were "isolated occurrences" or "widespread" because they lack sufficient detail as to frequency and duration.  It is not clear, for example, whether male jailers engaged in sex with female inmates on a daily, weekly, or monthly basis.  Further, the remaining allegations concerning the male jailers' practices of making salacious remarks about female inmates, watching them in the shower and demanding a "show," and accompanying them to locations in the Jail that were "off camera" are insufficient to allow a plausible inference that Poe and Johnson were on notice of a need to stop *sexual assaults* within the Jail.

In response to the Defendants' motion to dismiss, Bridges defended the sufficiency of the Second Amended Complaint but alternatively sought leave to amend to allege additional facts concerning incidents of male jailers having sex with or sexually assaulting female inmates prior to her incarceration.  In their reply, Defendants did not object to the request to amend.  Accordingly, the Court will now consider the merits of Bridges's request for leave to amend.

## 2.  Request for Leave to Amend

Federal Rule of Civil Procedure 15 allows a party to amend its pleading once as a matter of course, subject to certain time constraints. *See* Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend . . . only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "[A] district court has great discretion when deciding whether to grant a motion for leave to amend a complaint following the filing of responsive pleadings." *Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1314–15 (11th Cir. 2002). The United States Supreme Court has identified five nonexhaustive factors that, if present, would counsel against allowing the amendment: (1) undue delay, (2) bad faith or dilatory motive, (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) undue prejudice to the opposing party by virtue of allowing the amendment, and (5) futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). In the absence of these factors, however, "the leave [to amend] sought should, as the rules require, be 'freely given.'" *Id.*

Based on the totality of the circumstances, the Court concludes that Bridges should be permitted to amend her complaint. Although she has already amended twice, one amendment was ordered by the Court and the second merely corrected

the spelling of a defendant's last name.  Accordingly, there has not been a "repeated failure to cure deficiencies by amendments previously allowed." *See id.*  The Court cannot identify any evidence, or even any allegation, of bad faith or dilatory motive on Bridges's part.  Further, Defendants failed to identify any undue prejudice to them by virtue of allowing the amendment.  Moreover, the Court notes that this case is the lead case in a consolidated action where, in at least one associated case, defendants are still responding to the Plaintiff's complaint, and discovery does not close until October 30, 2020 (*see* docs. 25 & 39).  Thus, it appears to the Court that Defendants would not suffer undue prejudice if Bridges were allowed to amend at this stage.  While the "undue delay" factor may weigh against allowing the amendment, the Court finds it insufficient to overcome the remaining factors that weigh in favor of allowing the amendment.  Accordingly, Bridges is granted leave to file a Third Amended Complaint within eleven (11) days of this Order to plead additional facts supporting her § 1983 supervisory liability claim.

### B.  § 1983 Claim Against the City

The Court now turns to Bridges's § 1983 claim against Poe and Johnson in their official capacities, which the parties agree equates to a claim against the City of Jasper.  The actions of employees generally do not subject a municipality to liability in § 1983 actions.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691

(1978) ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Instead, municipalities may be held liable under § 1983 only where an employee's alleged violation of a person's constitutional rights arises from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

To establish a municipality's liability under § 1983, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479–80 (11th Cir. 1991)). "Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

167–68 (1970)).  Thus, municipal liability may be based on: "(1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994).  Defendants did not challenge Poe's or Johnson's status as final policymaker.

For the same reasons discussed in Part III.A.1., the Court concludes that the allegations of prior abuse, as currently pled, are insufficient for the Court to determine whether the practices within the Jail were "permanent and well settled" or "so pervasive[] as to be the functional equivalent of a policy," as opposed to mere "isolated occurrences."  In response to the Defendants' motion to dismiss, Bridges defended the sufficiency of the Second Amended Complaint but alternatively sought leave to amend to allege additional facts concerning incidents of male jailers having sex with or sexually assaulting female inmates prior to her incarceration.  In their reply, Defendants did not object to Bridges's request to amend.  Accordingly, for the same reasons discussed in Part III.A.2., Bridges is granted leave to amend her complaint within eleven (11) days of this Order to plead additional facts concerning the pervasive practices within the Jail for purposes of establishing municipal liability against the City.

## C. TVPA Claim

The TVPA subjects to criminal and civil liability "whoever knowingly" "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person" with the knowledge that "means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means" would be employed to "cause the person to engage in a commercial sex act." 18 U.S.C. §§ 1591(a), 1595. It also allows "victim[s] of a violation of this chapter" to bring a civil action against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter[.]" *Id.* § 1595(a). The latter provision, sometimes called "venture liability," is the basis upon which Bridges seeks to hold Poe and Johnson civilly liable for the sexual abuse she alleges to have suffered while she was incarcerated at the Jail.

Poe and Johnson do not dispute that, under Bridges's version of the facts, she was a victim of a violation of the TVPA or that they knowingly benefited from the trustee system in general and Bridges's labor specifically.[6] But that does not end the Court's inquiry. To state a claim based on venture liability, Bridges must also show

---

[6]    According to the complaint, Poe and Johnson received the benefit of Bridges's labor and the fruits of that labor, including but not limited to laundering clothes, laundering and folding towels, and preparing meals that were consumed by Jail employees and other inmates.

that Poe and Johnson knowingly benefited "from participation *in a venture which they knew or should have known engaged in an act in violation of the chapter*," i.e., a venture that engaged in an act of sex trafficking. Put differently, she must show that they knowingly benefited from participation in the venture whereby Buzbee "enticed" her to perform trustee duties and in return demanded her submission to his sexual demands upon force or threat of force. Upon review of the Second Amended Complaint, Bridges fails to plead sufficient facts from which this Court can infer that Poe or Johnson had the requisite actual or constructive knowledge of a venture engaged in sex trafficking. Bridges's response brief on this point is largely devoted to arguing that she pled sufficient facts to demonstrate the Defendants' actual or constructive knowledge of the alleged sexual abuse perpetrated by Buzbee (and other jailers). Even if this Court agreed that Bridges had adequately pled constructive knowledge of the alleged *sexual abuse*, it does not necessarily follow that she has adequately pled constructive knowledge of the alleged *sex trafficking* within the meaning of the TVPA. Indeed, while the complaint alleges that other jailers sexually abused inmates, there are no allegations that any jailers besides Buzbee abused trustees or used the trustee system in the way he allegedly did in order to commit acts of sexual abuse.

Further, while the Second Amended Complaint contains several allegations

under the TVPA count that Poe and Johnson "had actual knowledge of or acted with reckless disregard of the fact" that Bridges would be forced to commit commercial sex acts, and that she "would be subjected to a scheme and/or pattern of conduct that would make [her] believe that she would be subject to serious physical harm" if she failed to perform commercial sex acts, (doc. 35 at ¶¶ 113–14), these are conclusory allegations that this Court does not presume to be true, *see Iqbal*, 556 U.S. at 679.  In stating those allegations, Bridges has simply recast the elements of the TVPA statute and inserted the relevant parties where she deems appropriate. Critically, however, the allegations lack supporting factual content from which this Court can plausibly infer that Poe and Johnson knew or should have known about a sex trafficking venture.  *See Iqbal*, 556 U.S. at 679.

Bridges cites to a Tenth Circuit Court of Appeals case, *Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019), and a First Circuit Court of Appeals case, *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) (Souter, J. (Ret.)), for the proposition that if this Court reads her complaint's allegations as a whole, it must conclude that she has stated a plausible claim of venture liability under the TVPA.  While it is true that those Circuit Courts found that the complaints stated a plausible claim, the complaints were materially different from Bridges's.  In *Ricchio*, the complaint alleged that the Patels, who are comparable to Poe and Johnson here, had seen and

heard several exhibitions of the perpetrator's "coercive and brutal behavior to a physically deteriorating [Plaintiff]" and also had conversations with the perpetrator about reinstating their prior commercial dealings "in circumstances in which [the perpetrator's] coercive and abusive treatment of [Plaintiff] as a sex slave had become apparent to [them]." 853 F.3d at 555–57. And in *Bistline*, the plaintiff's complaint "recount[ed] in great detail how defendants were responsible for *creating the intricate scheme* that both enabled forced labor [which also violates the TVPA] and allowed the threats which enforced that labor to be effective," and it also alleged that "the scheme set up by defendants was designed *expressly* for the purpose of facilitating these crimes and also ensuring that defendants would personal reap ample benefits therefrom." 918 F.3d at 874–75 (first emphasis added). Bridges's pleadings lack comparable factual allegations from which this Court can plausibly infer Poe's or Johnson's liability under the TVPA.

In sum, the facts as presently alleged by Bridges do not give rise to a plausible inference that Poe or Johnson knew or should have known about any type of venture whereby inmates were forced to commit sex acts in exchange for acquiring or maintaining their trustee status, or that inmates were otherwise forced to commit sex acts from which Poe and Johnson knowingly received some benefit. Accordingly, Bridges's TVPA claim is due to be dismissed. However, because the Court is

allowing Bridges to amend her complaint to plead additional facts concerning her § 1983 claims as explained *supra*, the Court in its discretion will also allow her the opportunity to amend to plead additional facts, if she has such facts, in support of her TVPA claim within eleven (11) days of this Order.

### D. State Law Claims

As explained earlier, Bridges concedes that her assault and battery claim and violation of Ala. Code § 14-11-31 claim against Poe and Johnson are due to be dismissed without prejudice.  The City additionally argues that the state law claims against it are due to be dismissed because Bridges failed to file a pre-suit notice of claim in compliance with Ala. Code §§ 11-47-23 and 11-47-192.  Section 11-47-23 sets forth the timeframe in which actions against a municipality may be brought.  Before the suit may be brought, the injured party must file a sworn statement with the clerk "stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed."  Ala. Code § 11-47-192.  Together, the two code sections "require the presentment of such a claim within six months of the accrual of a tort cause of action against a municipal body as prerequisite to the filing of a civil cause of action asserting the claim."  *City of Montgomery v. Patterson*, 80 So. 3d 264, 265 n.1 (Ala. Civ. App. 2011).

Bridges did not affirmatively allege that she timely filed the required notice of

claim, nor did she respond to the City's argument that she failed to do so or that her alleged failure deprives the Court of its ability to consider her claims. Because it appears to the Court that Bridges has not complied with Ala. Code. §§ 11-47-23 and 11-47-192, her state law claims against the City are due to be dismissed without prejudice.

Before turning to the merits of Bridges's remaining state law claims, this Court must ensure that subject matter jurisdiction exists over the claims. Bridges's remaining claims are state law claims between nondiverse citizens.[7] Therefore, neither federal question jurisdiction nor diversity jurisdiction exists over them. *See* 28 U.S.C. §§ 1331–32. Accordingly, federal jurisdiction would only be proper if the state law claims meet the criteria for supplemental jurisdiction set forth in 28 U.S.C. § 1367. It appears to the Court that it probably could exercise supplemental jurisdiction over the state law claims because they are "so related to [the § 1983 and TVPA claims] that they form part of the same case or controversy." *See* 28 U.S.C. § 1367(a). However, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Thus, even assuming that the requirements of § 1367(a) are satisfied, this Court may nonetheless decline to exercise supplemental jurisdiction over the state law claims in

---

[7]     Bridges, Poe, and Johnson are all Alabama citizens.

certain circumstances, including where the Court has "dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c). As relevant here, if Bridges's federal claims ultimately do not survive dismissal, then this Court may decline to exercise jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the Court in its discretion shall defer ruling on the merits of Bridges's remaining state law claims until Bridges has amended her complaint to correct the deficiencies in her § 1983 and TVPA claims, at which point the Court will determine whether or not to exercise supplemental jurisdiction over the state law claims.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion (doc. 40) is GRANTED IN PART AND DENIED IN PART. Bridges's state law claims against the City are DISMISSED WITHOUT PREJUDICE. Her assault and battery claim and violation of Ala. Code § 14-11-31 claim against Poe and Johnson are also DISMISSED WITHOUT PREJUDICE. Bridges is also granted leave to amend her complaint within eleven (11) days of this Order to plead additional facts, if she has such facts, in support of her § 1983 claims and her TVPA claim. Finally, due to this Court's concerns about its subject matter jurisdiction over Bridges's remaining state law

claims, this Court will reserve its ruling on the requested dismissal of those claims

until Bridges has amended her complaint.

      **DONE** and **ORDERED** on April 20, 2020.

_____
L. Scott Coogler
United States District Judge

199335
