# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| **STACY BRIDGES**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:19-CV-00529-LSC |
| | ) | |
| **J.C. POE, JR.,** individually and in his | ) | |
| official capacity as Chief of the **CITY** | **)** | |
| **OF JASPER** Police Department, | ) | |
| **DEBORAH JOHNSON,** individually | ) | |
| and in her official capacity as a Jail | ) | |
| Supervisor, and **DENNIS BUZBEE**, | ) | |
| individually and in his official capacity | ) | **JURY DEMAND** |
| as Jailor, | ) | |
| | ) | |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

Plaintiff, Stacey Bridges ("Bridges" or "Plaintiff"), states as follows for her

Complaint against Defendants, J.C. Poe, Jr. ("Poe"), Deborah Johnson ("Johnson")

and Dennis Buzbee ("Buzbee"):

### *Introduction*

This Third Amended Complaint is submitted pursuant to this Court's Order

dated April 20, 2020.  Plaintiff notes the original complaint was incorrectly styled

as a matter for the Western Division, when in fact the case should have been

submitted for the Jasper Division.

### *Parties*

1.      Bridges is a woman residing in the Jasper Division of the Northern District of Alabama and is a natural person over the age of 21 years.

2.      Poe is a man residing in the Jasper Division of the Northern District of Alabama and is a natural person over the age of 21 years. At all times relevant to this lawsuit, Poe served as the Chief of Police for the City of Jasper. As Chief of Police, Poe served as the highest-ranking law enforcement officer employed by the City and assumed responsibility for oversight of all day-to-day law enforcement responsibilities for the Police Department of the City, including the operations of the City's Jail.

3.      Johnson is a woman residing in the Jasper Division of the Northern District of Alabama and is a natural person over the age of 21 years. At all times relevant to this lawsuit, Johnson served as the day-shift supervisor of the City's Jail. At times preceding the events described below and on other occasions, Johnson received reports of on-going sexual harassment and sexual mistreatment of female inmates perpetrated by male jailers employed in the Jail, but failed and/or refused to act to stop that unlawful conduct.[1]

---

[1] The Eleventh Circuit recently reaffirmed the clearly established law that "a guard does not need to know a detainee's specific ... condition to be deliberately indifferent to his or her serious medical need. *M.D. by Stukenberg v. Abbott,* 907 F.3d 237, 252 (5th Cir. 2018) (concluding that courts do not require state officials to be warned of a 'specific danger' to be held liable for deliberate indifference to a serious ... need …. Liability can attach even if a prison official knows only that, if no action is taken, the detainee faces a 'substantial risk

4.      Buzbee is a man residing in the Jasper Division of the Northern District of Alabama and is a natural person over the age of 21 years. At all times relevant to this lawsuit, the City employed Buzbee as a jailer in the City's Jail.

5.      The City is a municipal corporation, duly organized and existing under the laws of the State of Alabama, situated within the Jasper Division of the Northern District of Alabama.

### Jurisdiction

6.      The original jurisdiction of this Court is invoked pursuant to 29 U.S.C. §§ 1331 and 1343(a)(3) and (4) to obtain redress for the deprivation of rights guaranteed by the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983. The original jurisdiction of the Court is also invoked to obtain redress under 18 U.S.C. § 1595.

7.      The Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 for state law claims that arise from the same facts and circumstances from which Plaintiff's federal claims arose.

8.      Venue is proper pursuant to 28 U.S.C. § 1393(b), in that the events or occurrences giving rise to Plaintiff's claims occurred in the Northern District of Alabama, Jasper Division.

---

of serious harm.' *Farmer v. Brennan,* 511 U.S. 825,837 (1994)." *Taylor v. Hughes,* No. 17-14772 (11th Cir. April 3, 2019).

## *Facts*

9.     Plaintiff has suffered enormous tragedy in her personal life including, but not limited to, a serious car wreck and the death of her husband.

10.     Health care providers prescribed Plaintiff opioid pain medication to help her endure the physical pain symptoms resulting from the serious injuries she sustained in the wreck. Over time, she developed an addiction to the medication prescribed for her.

11.     When her healthcare provider discontinued prescribing Plaintiff medication for physical pain, Plaintiff began using heroin.

12.     As a result of her heroin use and addiction, Plaintiff engaged in criminal behavior.

13.     Plaintiff was arrested for various misdemeanors and one felony (which was downgraded to a misdemeanor). Plaintiff was convicted of misdemeanors, but was not convicted of any felonies.

14.     In connection with one misdemeanor conviction in the Jasper Municipal Court, Plaintiff was sentenced to confinement in the Jasper City Jail ("Jail").

15.     On or about February 5, 2017, Plaintiff began serving a 90-day sentence in the Jail.

16.	Shortly after her sentence began, Plaintiff was assigned to work release, thus allowing her to work on community projects.  Plaintiff was locked up at night during work release, but was free to work outdoors during the day. Her confinement was not in the Jail, but rather in another secure facility.

17.	When her work release terminated, Plaintiff was transferred to the Jail, where she became a trustee.

18.	Plaintiff's status as a trustee meant that she was not confined to her cell block continuously, but was able to leave her cell and cell block to perform work under the supervision of her jailers.

19.	As a trustee, Plaintiff performed physical labor (such as preparing meals, doing laundry, and cleaning), often outside the direct supervision of any jailer.

20.	Jail inmates coveted the position of trustee because it eased confinement, which would otherwise restrict them to their cells or cell blocks 23 hours a day.

21.	Plaintiff used tobacco before she became an inmate in the Jail.

22.	The discomfort of withdrawing from tobacco use in jail can be severe.

23.	The City formally prohibited cigarette smoking and the use of smokeless tobacco in the Jail.

24.	In the Jail, both male and female jailers guarded the female prisoners.

25.     Male jailers were frequently allowed to oversee and interact with female prisoners without direct supervision and without the presence of female jailers.

26.     Male jailers, not limited to Buzbee, would summon Plaintiff to a room where one or more male jailers were present.

27.     Various areas of the Jail were surveilled by video cameras, whose signals appeared on monitors located in the central office where dispatchers were employed to monitor inmates 24/7.

28.     The areas surveilled by video cameras included the area where female prisoners showered.

29.     Prior to Plaintiff's incarceration, male jailers in the Jail engaged in sex with female prisoners confined there.

30.     On at least one occasion, approximately three years before Plaintiff began her confinement, at least one female inmate lodged an official complaint in writing, with Johnson, alleging inappropriate sexual harassment and mistreatment by a jailer employed at the Jail.

31.     In 2013, the Mayor of Carbon Hill, Alabama was indicted for having sex with female prisoners in the municipal jail of that city. The Mayor eventually pled guilty to certain crimes in the United States District Court for the Northern District of Alabama.

32. Carbon Hill is less than 20 miles away from Jasper, and the Mayor's prosecution was well publicized, thus putting Poe and others on notice that female inmates were at risk of sexual mistreatment.

33. Shortly after Plaintiff began serving her sentence in the Jail, it became apparent to other people, as well as to Plaintiff, that Buzbee sexually desired Plaintiff.

  A. For example, one prisoner was alarmed by Buzbee's predations toward Plaintiff and reported the issue to her mother.

  B. Upon information and belief, this prisoner's mother reported the issue to higher officials at the Jail, although Plaintiff is not certain that the matter was reported directly to Johnson and Poe.

34. Buzbee would give Plaintiff drugs.

35. Buzbee would give Plaintiff tobacco.

36. Buzbee would make sexually suggestive comments to and about Plaintiff in her presence.

37. Buzbee would make sexually suggestive comments about Plaintiff in the presence of persons other than Plaintiff.

38. After Plaintiff became a trustee, Buzbee summoned Plaintiff to a room on the first floor of the Jail, which was used for laundry and storage.

39. The room on the first floor of the Jail contained a storage closet ("First Floor Closet").

40. The City failed to adequately surveil the First Floor Closet with video cameras.

A. In particular, and without limitation, there were no cameras inside the First Floor Closet.

B. The cameras at the Jail were adequate to allow monitoring of people entering or exiting the room where the First Floor Closet was located. However, the cameras in that room were positioned in such a way that it only showed images of the lower legs and feet of the individuals that entered that room.

C. Jailers were frequently observed repositioning the various cameras at the Jail by other Jail employees.

D. Moreover, Poe and others could view, and did view, images from the Jail cameras on laptops and iPhones from remote locations when they were not present at the Jail.

E. Thus, it was easy for Poe or anyone else with access to a monitor (including Johnson when she was on duty) to see a jailer take a woman into the room where the First Floor Closet was located, disappear from view of the monitor without exiting the room (which exit would have been viewable on a monitor, had the exit

occurred), and know that the jailer had taken the woman into the First Floor Closet for several minutes where he (the jailer) and she could not be observed.

41. The City failed to surveil the entryway to the First Floor Closet with video cameras so that someone viewing the monitors could discern who entered or exited the closet.

42. Buzbee, aware that the First Floor Closet's surveillance was inadequate, entered the First Floor Closet and directed Plaintiff to join him there.

43. After Plaintiff entered the First Floor Closet, Buzbee forcefully groped and kissed Plaintiff, though Plaintiff resisted. In this regard, it is important to note that any sexual contact between jailer and an inmate is unlawful. Moreover, the Eleventh Circuit has recently made it clear that any sexual contact by a male jailer or correctional officer with an inmate or detainee is not only unconstitutional, but also is an act for which qualified immunity affords no protection. *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020). After this initial encounter in the First Floor Closet, Buzbee continued to summon Plaintiff to the First Floor Closet on numerous occasions, where he would forcefully grope, fondle and kiss her.

44. The second floor of the Jail included a storage room ("Second Floor Room") where, among other things, the Jail maintained a freezer where it stored frozen foods.

45.     As part of her duties as trustee, Plaintiff would prepare food for inmates and/or Jail personnel.

46.     As trustee, Plaintiff would also load and unload food stored in the freezer located in the Second Floor Room.

47.     Buzbee would summon Plaintiff to assist with the loading and unloading of food and direct her to follow him into the Second Floor Room.

48.     Once Buzbee and Plaintiff were alone together in the Second Floor Room, Buzbee would forcefully grope, fondle, and kiss Plaintiff.

49.     When Buzbee and Plaintiff were alone together in the Second Floor Room, Buzbee forced Plaintiff to perform oral sex on him.

50.     The Jail premises included an outbuilding called the Connex.

51.     The City failed to install video cameras to allow surveillance of the entry, exit, and interior of the Connex building.

52.     Buzbee directed Plaintiff to accompany him to the Connex on multiple occasions, where he sexually touched Plaintiff while they were alone together inside the building.

53.     Buzbee attempted on at least one occasion to have vaginal intercourse with Plaintiff but stopped when Plaintiff alerted him to the sound of someone approaching.

54. Buzbee was not the only jailer at the Jail to sexually mistreat female inmates, and Plaintiff was not the only female inmate or detainee whom Buzbee sexually mistreated.

A. For example, Buzbee made inmate ABC have sex with him while she was detained in the jail. Poe, Johnson and other jailers knew that Buzbee was having sex with inmate ABC in the Jail.

B. In addition, Buzbee made inmate XYZ have sex with him while she was detained in the jail. Poe, Johnson and other jailers knew that Buzbee was having sex with inmate XYZ in the Jail.

C. Rusty Boyd made Charity Tessener, Whitley Goodson, Jessica Rainer, and Allison Mann have sex with him while they were detained in the Jail. Ms. Johnson knew that Boyd made these women have sex with him.

D. John Softley, a detective for the City of Jasper, advised Poe that jailers were making women have sex with them in the Jail. Softley also received this information from his own daughter, as well as from the husband of one of the women who were in the Jail or who had been in the Jail. Softley confronted Poe and others with this information.

E. Monique Softley confronted Poe and Johnson with information about jailers making women have sex with them in Jail.

F.     Some of the information that Poe and Johnson received about jailers making female inmates have sex with them was received after Plaintiff in this matter was made to have sex with Buzbee. However, Plaintiff respectfully submits that not all practices that demonstrate a policy or procedure on the part of a municipality need occur before the Plaintiff is injured in order for an injury caused by that policy or procedure to be actionable: otherwise, the City would not have to answer for its wrongs until the victims became numerous. The first victim is not without a remedy.

55.     In light of all the circumstances, the failure of Poe and Johnson to take measures to keep female inmates such as Plaintiff safe from sexual mistreatment when such inmates became trustees directly resulted in the sexual violation of Plaintiff by Buzbee.

56.     For purposes of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as the City of Jasper's Chief of Police, Poe is the senior official responsible for implementing policy at the Jail. As such, he is responsible for the day-to-day operations and the adoption and implementation of all policies, practices, and customs in the Jail and, as such, serves as the City's final policy-making authority over the Jail.  This is not merely a conclusory allegation made by Plaintiff, but is prescribed by the statutes of the State of Alabama, which provide that a Chief of Police is responsible for the police department of a municipality.

## COUNT I

## UNLAWFUL DETENTION AND CRUEL AND UNUSUAL PUNISHMENT

57. Plaintiff adopts and incorporates by reference paragraphs 1 through 56 of this Amended Complaint, as if fully set forth herein.

58. At all times relevant to this action, Poe, Johnson, and Buzbee acted under color of state law.

59. Poe is sued in his official and individual capacity. He allowed, condoned, and ratified the customs and practices arising to a policy, thereby authorizing the infringement of constitutional rights of female inmates of the Jail, including Plaintiff.

60. Johnson is sued in her individual capacity. People had told Johnson not to allow the male jailers to be alone with the female inmates and detainees, but she just ignored those warnings, knowing all the while that the male jailers were sexually mistreating the women and continually making salacious remarks toward them. Johnson is also sued in her official capacity, insofar as Poe delegated or attempted to delegate some of his statutory authority to her for purposes of running the jail.

61. Defendants Poe and Johnson allowed a custom and practice to develop at the Jail arising to a policy, thereby authorizing male jailers to sexually mistreat female inmates, including Plaintiff. In particular and without limitation of the foregoing, Poe and Johnson allowed male jailers openly to make salacious remarks

13

about and to female inmates without reprimand, allowed male jailers to enter women's dorm and interact with the female inmates, allowed male jailers to accompany female inmates to locations in the Jail that were "off camera," and allowed male jailers to be alone with female inmates, including Plaintiff, in those locations.

62.     Poe and Johnson knew or should have known that female prisoners were vulnerable to sexual mistreatment forced upon them by male jailers. Poe and Johnson failed and/or refused to implement measures to deter and to stop the sexual mistreatment of female inmates, but rather tolerated such mistreatment and fostered an environment making mistreatment likelihood, if not a certainty, even though both of them knew that the women were being sexually mistreated.

63.     In particular and without limitation of the foregoing, Poe and Johnson allowed male jailers including, but not limited to, Buzbee: (a) to routinely make sexual remarks about female prisoners while they oversaw female prisoners; (b) to enter the women's dorm unattended to escort and observe female inmates to and from the shower, where they observed the women and encouraged them to provide "a show"; (c) to accompany female inmates into storage rooms and other inadequately surveilled areas, where the male jailers could and did sexually mistreat them; (d) to provide drugs and tobacco to female inmates who were addicted to drugs and tobacco to ingratiate themselves to the inmates and thereby encourage them to

engage in sexual activities; and (e) to condition female inmates' trustee status on their acquiescence to the sexual advances of their male jailers. Poe and Johnson did not just fail to prevent these things from happening while in blissful ignorance. They actually allowed these practices to occur while their own iPhones and laptops and monitors were showing the male jailers taking the women inmates or detainees into spaces that were unsafe for the women, even after they had been informed about and had actually observed at least some of the misconduct by the male jailers (although Plaintiff concedes that Poe and Johnson may not have seen video footage of Buzbee actually making Plaintiff have sex with him).

64. These practices allowed by Poe and Johnson were due to the decisions made by Poe and other supervisors, such as Johnson, who Poe selected as Supervisor of the day-time shift and placed in charge of the Jail, who together with Poe served as the final policy-making authorities over the day-to-day operations of the municipal Jail.

65. The customs and practices allowed by Poe and Johnson violated Plaintiff s rights, as guaranteed by the Fourth and Eighth Amendments of the United States Constitution, as such amendments are made applicable to the States by the Fourteenth Amendment of the United States Constitution and made actionable by 42 U.S.C. § 1983.

66.   As a result of the actions of Defendants Poe, Johnson, and Buzbee, Plaintiff has suffered and continues to suffer physical injuries, severe emotional distress and mental anguish, and other injuries.

67.   Defendants Poe, Johnson and Buzbee acted with deliberate indifference to Plaintiff's federally protected rights.

## COUNT II

## CONSPIRACY

68.   Plaintiff adopts and incorporates paragraphs 1 through 56 of this Amended Complaint, as if fully set forth herein.

69.   At all times relevant to this action, Poe, Johnson and Buzbee acted under color of state law.

70.   Poe, Johnson and Buzbee are sued individually and in their official capacities, Poe as Chief of Police, Johnson as Jail Supervisor, and Buzbee as Jailer, respectively, who allowed, authorized, condoned, and ratified the customs and practices arising to a policy of allowing male jailers to sexually harass and sexually mistreat female inmates of the Jail, including Plaintiff.

71.   Poe, Johnson and Buzbee, while exercising their positions of authority under color of state law in their capacity as public law enforcement officials and representatives of the City and its Police Department, unlawfully conspired to and did, in fact, allow customs and practices about which they knew, allowing for the

sexual harassment and mistreatment of female inmates incarcerated in the Jail. In particular and without limitation, Poe and Johnson agreed with Buzbee and Rusty Boyd that Rusty Boyd and Buzbee could select which female inmates would serve as trustees, then take them to various parts of the Jail where they (Boyd and Buzbee) could not be seen having sex with the women. Poe and Johnson further agreed with Boyd and Buzbee that Boyd and Buzbee could sexually touch the women (meaning they could put their hands and other body parts on the breasts, buttocks, and vaginas of the women inmates, particularly those chosen to serve as trustees, all while evidence of this misconduct was displayed on video monitors, laptops, and iPhones.

72. Poe and Johnson allowed, authorized, ratified, and/or condoned Buzbee's and Boyd's actions, thereby making them co-conspirators who are likewise liable for the injuries Plaintiff suffered.

73. As a direct and proximate result of the conspiracy between Poe, Johnson and Buzbee as set forth above, Plaintiff suffered physical injury and incurred severe mental anguish and emotional distress, all in violation of the Plaintiff's rights as guaranteed by the Fourth and Eighth Amendments of the United States Constitution, as such amendments are made applicable to the States by the Fourteenth Amendment of the United States Constitution and made actionable by 42 U.S.C. § 1983.

74.     As a result of the actions of Poe, Johnson and Buzbee, Plaintiff has suffered and continues to suffer injuries including, but not limited to, physical injuries, severe emotional distress and mental anguish.

75.     Poe, Johnson and Buzbee acted with deliberate indifference to Plaintiff's federally protected rights.

## COUNT III

### *ASSAULT AND BATTERY*

76.     Plaintiff adopts and incorporates paragraphs 1 through 56 of this Amended Complaint as if fully set forth herein.

77.     Buzbee is sued under this Count in his individual capacity only.

78.     Buzbee, while exercising a position of authority in his capacity as a public law enforcement official, unlawfully assaulted and battered the Plaintiff.

79.     Poe and Johnson are sued under this Count in their individual capacities only.

80.     Poe and Johnson allowed, authorized, ratified and/or condoned Buzbee's actions and/or failed to stop him, thereby making them also liable for the injuries Plaintiff sustained.

81.     As a direct and proximate result of the acts of Buzbee, Poe and Johnson, as set forth above, Plaintiff suffered physical injury, severe mental anguish and

emotional distress in connection with the assault and battery to which she was subjected.

**COUNT IV**

**NEGLIGENT HIRING**

82. Plaintiff adopts and incorporates paragraphs 1 through 56 of this Amended Complaint, as if fully set forth herein.

83. Poe is sued under this Count in his individual capacity only.

84. Defendant Poe owed a duty to Plaintiff to conduct such due diligence as was necessary to ensure that Jail supervisors and law enforcement officers employed by the City's Police Department to serve as jailers in its Jail were suitably prepared through education, training, experience and temperament to protect the rights of the inmates over whom they were entrusted.

85. While the statutory authority for hiring jailers is vested in the Jasper Personnel Board, the fact of the matter is that Poe and other supervisors at the Jail hired jailers. Poe required no qualifications for hiring whatsoever. For example, he did not require jailers to have any experience or to attend "jail school." He did not require jailers to take any sort of continuing education classes, even such as "jail ethics" offered to members of the Alabama League of Municipalities. From his time as Chief Deputy of the Walker County Jail (a position where he was in charge of women in that jail, which was the subject of litigation and a governmental investigation) where female inmates were routinely made to have sex with male

jailers, Poe knew full well the danger of allowing untrained male jailers to have a free hand with women inmates or detainees.

86. Poe knew or should have known that Buzbee was engaged in sexually harassing and mistreating female inmates of the Jail and that he was unfit for duty as a law enforcement officer. In hiring Buzbee as a jailer and by providing him the means to sexually mistreat female inmates of the Jail, including Plaintiff, in the unlawful manner alleged above, Poe breached his duty to Plaintiff.

87. As a direct and proximate result of Poe's breach of his duty to Plaintiff, Poe caused Plaintiff to suffer physical injury and suffer severe mental anguish and emotional distress and other injuries in connection with his negligent hiring of Buzbee.

## COUNT V

## NEGLIGENT TRAINING AND SUPERVISION

88. Plaintiff adopts and incorporates paragraphs 1 through 56 of this Amended Complaint as if fully set forth herein.

89. Poe is sued under this Count in his official and individual capacities.

90. Johnson is sued under this Count in her individual capacity only.

91. Poe and Johnson owed a duty to the inmates incarcerated in the Jail including Plaintiff, to train, supervise and discipline its law enforcement officers, including Buzbee, in whatever manner necessary to ensure they served and protected

the rights of the inmates incarcerated in the Jail. This was particularly true after Poe and Johnson actually knew that male jailers, including but not limited to Buzbee, were sexually mistreating women. This duty was particularly well established on the part of Poe in light of his service as Chief Deputy in charge of the Walker County Jail, where the sexual mistreatment of women inmates and detainees was not uncommon. Poe and Johnson knew that the jailers, including but not limited to Buzbee, needed training to not only avoid, but also to report sexual mistreatment of women inmates. Since Johnson herself was in the Jail daily she saw not only male jailers sexually mistreating women, but also saw other jailers witnessing that mistreatment but reporting nothing, she was aware of the need for training in this regard. The fact that Monique Softley, a graduate of jail school, bravely reported the sexual mistreatment of the inmate shows what even a brief period of training could accomplish.

92. Poe and Johnson breached their duty to Plaintiff by failing to properly train, supervise, and discipline Buzbee and others, thereby providing them the means to sexually harass and sexually mistreat Plaintiff in the unlawful manner alleged above.

93. As a direct and proximate result of the breach of their duty, Poe and Johnson caused Plaintiff to suffer physical injury and suffer severe mental anguish and emotional distress as a result of the negligent training and supervision of Buzbee.

## COUNT VI

## VIOLATION OF ALA. CODE SECTION 14 -11-31

94.    Plaintiff adopts and incorporates paragraphs 1 through 56 of this Amended Complaint, as if fully set forth herein.

95.    Poe, Johnson and Buzbee are sued under this Count in their individual capacities only.

96.    Plaintiff has the right to bring this claim pursuant to *Hardie-Tynes Manufacturing Co. v. Cruse*, 189 Ala. 66, 78, 66 So. 657, 661 (Ala. 1914), wherein the Alabama Supreme Court held that "every criminal act which injures the person or property of another is also a civil tort, redressable by the courts." See also, *Martina v. Cagle*, 454 So. 2d 1383, 1385 (Ala. 1984); *Smitherman v. McCafferty*, 622 So. 2d 322 (Ala. 1993).

97.    Alabama Code § 14-11-31, in pertinent part, provides that:

(a)    It shall be unlawful for any employee to engage in sexual conduct with a person who is in custody of the Department of Corrections, the Department of Youth Services, a sheriff, a county, or a municipality.

(b)    …

(c)    Any person violating subsection (a) or (b) shall, upon conviction, be guilty of custodial sexual misconduct.

(d)    Custodial sexual misconduct is a Class C felony.

(e)    For purposes of this article, the consent of the person in custody of the Department of Corrections, the Department of Youth

Services, a sheriff, a county, or a municipality ... shall not be a defense to a prosecution under this article.

98.     On numerous occasions, Buzbee violated Alabama Code § 14-11-31 by engaging in custodial sexual misconduct with Plaintiff.

99.     Poe and Johnson knew or should have known that female prisoners were vulnerable to custodial sexual misconduct imposed upon them by male jailers. Poe and Johnson failed and/or refused to implement measures to deter and stop the custodial sexual misconduct imposed upon female prisoners, even though they had actual knowledge of the sexual mistreatment, and fostered an environment making such conduct a likelihood, if not a certainty.

100.    In particular and without limitation of the foregoing, Poe and Johnson allowed male jailers: (a) to routinely make sexual remarks about female prisoners while they oversaw female prisoners; (b) to enter the women's dorm unattended and to escort female prisoners to and from the shower, where they observed them and encouraged them to provide "a show"; (c) to accompany female prisoners into storage rooms and other inadequately surveilled areas, where the male jailers could and did sexually mistreat female prisoners; (d) to provide drugs and tobacco to female prisoners who were addicted to drugs and tobacco; and (e) to condition female inmates' trustee status on their acquiescence to the sexual advances of the male jailers.

101.   These practices allowed by Poe and Johnson were due to the decisions made by the Chief of Police, who is the final policy-making authority over the day-to-day operations of the municipal Jail.

102.   As a result of the actions of Poe, Johnson and Buzbee, Plaintiff has suffered and continues to suffer injuries including, but not limited to, physical injuries, severe emotional distress and mental anguish.

## COUNT VII

## OUTRAGE

103.   Plaintiff adopts and incorporates paragraphs 1 through 56 of this Amended Complaint, as if fully set forth herein.

104.   Poe, Johnson and Buzbee are sued in their individual capacities only.

105.   Poe, Johnson and Buzbee intentionally and/or recklessly caused Plaintiff to suffer great physical injury and emotional distress and such other injuries and damages as alleged above.

106.   The actions of Poe, Johnson and Buzbee were so outrageous and so extreme in degree as to go beyond all bounds of decency, and are atrocious and utterly intolerable in a civilized society.

107.   The emotional distress and bodily injury Poe, Johnson and Buzbee inflicted upon the Plaintiff were so severe that no reasonable person could be expected to endure it.

## COUNT VIII

## SEX TRAFFICKING

108. Plaintiff adopts and incorporates paragraphs 1 through 56 of this Amended Complaint, as if fully set forth herein.

109. When Plaintiff became a trustee at the Jail, Poe, Johnson and Buzbee "obtained" Plaintiff within the meaning of 18 U.S.C. § 1591, in that Plaintiff was segregated from the rest of the women in the jail population, such that she would be alone with male jailers in areas of the Jail that were not surveilled by video cameras or otherwise.

110. By making Plaintiff a trustee at the Jail, such that Plaintiff was allowed to the leave her cell block and remain outside of said cell block for the duration of the supervising jailer's shift, particularly when she served as a trustee on the afternoon or night shifts (although Jail policy mandated that all trustees must be put back in their cells no later than 8 p.m.), Poe, Johnson and Buzbee "enticed" Plaintiff within the meaning of 18 U.S.C. § 1591.

111. By providing drugs and tobacco to Plaintiff, Buzbee "enticed" Plaintiff within the meaning of 18 U.S.C. § 1591.

112. When they obtained and/or enticed Plaintiff as described above, Poe, Johnson and Buzbee did so with either actual knowledge of or reckless disregard of

the fact that Plaintiff would be, by threats of force, fraud or coercion, caused to commit a commercial sex act, as that term is defined in 18 U.S.C. § 1591.

113.  In particular and without limitation of the foregoing, Poe, Johnson and Buzbee had actual knowledge of or acted in reckless disregard of the fact that Plaintiff would be subjected to a scheme and/or pattern of conduct that would make Plaintiff believe that she would be subject to serious physical harm including, but not  limited to, mental trauma if she failed to perform one or more acts, such  as the tasks required of a trustee, but also if she failed to perform one or more commercial sex acts, as that term is defined in 18 U.S.C. § 1591.

114.  Poe, Johnson and Buzbee participated in a venture whereby Plaintiff was obtained and/or enticed to work as a trustee and subjected to a scheme and/or pattern of conduct that would make Plaintiff believe that she would be subject to serious physical harm including, but not limited to, emotional trauma if she failed to perform one or more acts, such as the tasks required of a trustee, but also if she failed to perform one or more commercial sex acts, as that term is defined in 18 U.S.C. § 1591.

115.  Poe, Johnson and Buzbee financially benefited and received things of value by virtue of obtaining and/or enticing Plaintiff  to serve as a trustee, whereby Plaintiff would be subjected to a scheme and/or pattern of conduct that would make Plaintiff believe that she would be subject to serious physical harm including, but

not limited to, emotional trauma if she failed to perform one or more acts, such as the acts of a trustee, but also if she failed to perform one or more commercial sex acts, as that term is defined by 18 U.S.C. § 1591. The financial benefit received by these individuals included the labor of Plaintiff and the fruits of that labor including, but not limited to, Plaintiff laundering clothes, laundering and folding towels, and preparing meals that were consumed by jail employees and/or other inmates.

116.     Poe, Johnson and Buzbee actually knew the fact or, in the alternative, acted in reckless disregard of the fact, of the danger of serious physical harm in which they placed Plaintiff.

117.     Buzbee was an actual perpetrator under the Act and is civilly liable to Bridges for his actions.

118.     The position of trustee within the Jail was not a voluntary position. The decision to assign Plaintiff to the position of trustee was made by one of the jailers, then ratified by Johnson.

119.     Plaintiff was told that she could be replaced as trustee at any time and knew that if she did not acquiesce to the sexual demands, that she would be relieved of her status as trustee, which would result in her not being provided with drugs and cigarettes, and which would result in her being required to remain in her cell for twenty-three hours per day.

120.   Another inmate who was incarcerated in the Jail after Plaintiff was released was, in fact, temporarily relieved of her status as trustee and placed on lock-down for a period of one week when she refused to acquiesce to the sexual advances of Jailer Rusty Boyd.

121.   There was an elaborate scheme in place at the Jail where the jailers would select the female inmates they wished to victimize, and then some of these jailers (particularly Boyd) would allow Buzbee to take Plaintiff to various unsurveilled places in the Jail where he could force her to perform sexual acts.

122.   Poe, in his official and individual capacities, and Johnson are liable for their participation in a venture that they knew or reasonably should have known was violating the Act.  In particular, Poe and Johnson knew or reasonably should have known that male jailers (including Buzbee) were selecting one woman after another to serve as trustees; that male jailers (including Buzbee) were taking these women off camera into the First Floor Closet, the Second Floor Room, and into the Connex, because Poe and Johnson could see the women walk out of camera view when the only place into which they could disappear was the First Floor Closet, where the women remained, or the Second Floor Room; that the women were being made to have sex with the male jailers, because Monique Softley, a female jailer, and John Softley, a male employed as a peace officer and investigator by the City of Jasper, had reported these issues to Poe and Johnson; that this particular situation with

Plaintiff was so open and obvious that even another inmate reported the problem to her family member; and that Poe, in particular, could and did watch the footage from the Jail cameras on his iPhone and laptop; and because Poe and Johnson observed and heard the openly sexualized atmosphere in the Jail, where male jailers (including Buzbee) made sexual remarks to women inmates and detainees, groped them, rubbed up against them and generally treated them like chattel.

WHEREFORE, Plaintiff respectfully prays judgment as follows:

A.     For compensatory damages against Poe, Johnson and Buzbee, in their official capacities as representatives of the City, in an amount to be proven at trial;

B.     For exemplary and punitive damages against Poe and Johnson, in their individual capacities, in an amount to be proven at trial;

C.     For injunctive relief against Poe, Johnson and Buzbee as well as all those acting in concert with them, requiring them to exercise diligence in hiring practices and to properly train, supervise, and discipline their jailers, as well as to operate the Jail in a manner reasonably calculated to promote the safety of the women incarcerated there.

D.     For the costs of this suit, including Plaintiff's reasonable attorneys' fees, costs and expenses; and

E.     For such further and other relief as the Court deems appropriate.

**Plaintiff demands trial by struck jury.**

Respectfully submitted,


/s/ Frank Ozment
Frank Ozment (ASB-7203-N73J)
Frank Ozment Attorney at Law, LLC
Of Counsel
Fulmer Schudmak, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
(205) 918-8905
frank@fulmershudmak.com
**Attorney for Plaintiff**

**OF COUNSEL:**

Michele E. Pate (ASB-4457-E49F)
Law Office of Michele E. Pate
P.O. Box 3391
Jasper, AL  35502
(205) 275-1700
mpatelaw@gmail.com

Andrew Allen (ASB-3867-E56A)
Law Offices of Andrew C. Allen, LLC
Of Counsel
Fulmer Schudmak, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
(205) 847-5199
aallen@fulmershudmak.com

**Attorneys for Plaintiff**

**<u>Certificate of Service</u>**

I hereby certify that on the 1st day of May, 2020, I filed the foregoing electronically through the Court's CM/ECF filing system which will provide notice to the following:

Timothy P. Donahue
DONAHUE & ASSOCIATES LLC
1020 22nd Street South
Birmingham, AL  35205
**Attorney for Defendants**

/s/ *Frank Ozment*
Of Counsel